# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAR 20 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Samsung GSM SM-J600G DS Galaxy J6<br>IMEI: 357109095116743 seized from Jose<br>Guadalupe AVILES-Cordero | )<br>)<br>)  Case No. '19MJ8886<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location):* **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___952, 960 etc___, and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Hanan, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/20/19

*Judge's signature*

City and state: El Centro, California     Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

a.  One Samsung GSM SM-J600G DS Galaxy J6 IMEI: 357109095116743; seized from AVILES (the SUBJECT DEVICE )

The SUBJECT DEVICE is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, El Centro, CA.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of distribution of controlled substances, and conspiracy to do same (21 U.S.C. §§ 841, 846); importation of controlled substances, and conspiracy to do same (21 U.S.C. §§ 952, 960, 963); and illegal use of a communication facility (21 U.S.C. § 843(b)) (the SUBJECT OFFENSES):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to illegally acquire, import, and distribute controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, importation, and distribution of controlled substances;

    c. tending to identify co-conspirators, criminal associates, sources, or others involved in the illegal acquisition, importation, and distribution of controlled substances;

    d. tending to identify travel to or presence at locations involved in the illegal acquisition, importation, and possession of controlled substances;

    e. tending to identify the user of, or persons with control over or access to, the SUBJECT DEVICE; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David Hanan, being duly sworn, hereby state as follows:

### INTRODUCTION

1. This affidavit supports an application authorizing a search warrant for the following digital device, currently in the custody of the Department of Homeland Security, Homeland Security Investigations in El Centro, California, seized from Jose Guadalupe AVILES-Cordero (AVILES) on December 5, 2018 (more particularly described in Attachment A and incorporated herein):

a. One Samsung GSM SM-J600G DS Galaxy J6 IMEI: 357109095116743; seized from AVILES (the SUBJECT DEVICE).

2. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that the SUBJECT DEVICE is an instrumentality and contains evidence of crimes, specifically, violations for distribution of controlled substances, and conspiracy to do the same (21 U.S.C. §§ 841, 846); importation of controlled substances, and conspiracy to do the same (21 U.S.C. §§ 952, 960, 963); and illegal use of a communication facility (21 U.S.C. § 843(b)) (the SUBJECT OFFENSES).

### EXPERIENCE AND TRAINING

4. I am a federal "Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent (SA) with the U.S. Department of Homeland Security (DHS), Homeland Security Investigations (HSI) since August of 2016. Previous to becoming a Special Agent, I was employed as a Supervisory Border Patrol Agent and Border Patrol Agent with DHS since September of 2010. Previous to becoming a Border Patrol Agent, I was employed as a Reserve Deputy Sheriff for the Orange County, California Sheriff's Department since September of 2008. I have attended and successfully

1

graduated from the Criminal Investigator Training Program and HSI Special Agent Training Program as well as the Border Patrol Academy at the Federal Law Enforcement Training Center. I have also attended and successfully graduated from the Orange County, California Sheriff's Department Modular Basic Peace Officer Training Academy. I hold a Bachelor of Arts degree in Social Science from Western Governors University and a Master of Business Administration degree from American Military University. I am currently assigned to HSI Calexico Contraband Smuggling Group Two. This group is tasked with investigating transnational criminal smuggling organizations operating in, around, and through Imperial County, California. My primary duties involve the investigation of violations of Titles 8, 19, and 21 of the United States Code. I have received training in investigating various immigration, customs, and controlled substance related offenses, including the importation of narcotics and narcotics trafficking. I have also had training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities. Since becoming an SA, I have been involved in numerous narcotics trafficking investigations involving the importation, distribution, and sale of large quantities of controlled substances. I have also worked with other agents with extensive experience in narcotics smuggling investigations.

5.  Based upon my training and experience as a Special Agent, as a law enforcement officer, and consultations with other law enforcement officers experienced in illegal firearms possession, trafficking, drug dealing, and trafficking investigations, I am also aware that:

   a.  Drug dealers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b.  Drug dealers and traffickers and their accomplices will use cellular telephones to coordinate with each other, contact their buyers and suppliers, and negotiate the purchase or sale of their illegal merchandise;

      c.    Drug dealers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their buyers or suppliers will arrive at predetermined locations;

      d.    Drug dealers and traffickers will use cellular telephones to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

      e.    Drug dealers and traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

6.    The use of cellular telephones by individuals involved in the illegal trafficking of controlled substances, tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

7.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a person using a cellular telephone for illegal drug trafficking would likely be stored on any SIM Card that has been utilized in connection with that telephone.

8.    The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

9.    I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case.

**FACTS SUPPORTING PROBABLE CAUSE**

10.    On December 5, 2018, at approximately 12:18 p.m., AVILES entered the United States from Mexico through the Calexico, California East Port of Entry via the

3

commercial vehicle lanes. AVILES was operating a teal 2008 Freightliner tractor bearing California license plates and pulling a commercial trailer. He was the sole occupant of the vehicle.

11. Customs and Border Protection Officers (CBPOs) selected AVILES' vehicle for further inspection in the secondary inspection area because AVILES appeared to be very anxious and in a rush to leave, which is unusual for a commercial driver that regularly crosses the border. When a CBPO notified AVILES that he was to be sent to secondary, AVILES snatched his identification back from the CBPO and initially failed to comply with his instructions by driving off.

12. CBPOs were eventually able to direct AVILES to the secondary inspections area. Once there, an x-ray scan of the trailer showed anomalies in the roof. A narcotics canine also gave a positive alert to a trained odor while screening the trailer.

13. While in the secondary inspection area, CBPOs noticed that AVILES appeared to be continuously texting on his mobile phone.

14. Further examination of the trailer uncovered packages located in the roof. CBPOs removed over 90 packages of a white crystalline substance that field-tested positive for methamphetamine and had a weight of approximately 595.04 kilograms (1,309.088 pounds). Additional packages were removed and tested positive for both heroin and cocaine, with approximate weights of 4.26 kilograms (9.37 pounds), and 1.2 kilograms (2.64 pounds), respectively.

15. CBPOs also seized the SUBJECT DEVICE from AVILES.

16. After his arrest, AVILES was advised of his *Miranda* rights and agreed to make a statement. AVILES stated he was a commercial driver and that he regularly crossed into the United States, as much as three times per day. AVILES denied knowledge of the drugs in the trailer. He stated that he was instructed to drop off the trailer at the Alpha Truck Lot located in Calexico, California and that he was to be paid $14 for the trip.

17. AVILES also admitted to deleting data, including text messages, from his phone after being sent to the secondary inspection area. AVILES initially stated he deleted

the information because he needed the space, but later changed his story, and stated he was having an extramarital affair. When agents confronted him with the fact that the inspection had nothing to do with his personal life, AVILES changed his story again and stated he deleted the texts so that he would not get confused about his current job by reviewing texts from his old job.

18. On the same day, Sixto Alfonso Felix-Lopez (Felix) and Sixto Alfonso Felix-Barrera (Barrera) contacted agents at the Calexico East, Port of Entry. They identified themselves as the owners of the business, Transcafe Trucking (Transcafe) that employed AVILES and owned the tractor he was driving. Both Felix and Barrera were interviewed. Felix stated that he had owned the tractor approximately four years and that he had known AVILES since 2000. He stated that AVILES has worked with him two times since he has known him and that AVILES makes around $250 a week, plus commission, which varies depending on how many loads he picks up, but is approximately $14 per trip.

19. Felix stated "Felizardo," later identified as Felizardo Fregoso (Fregoso), the dispatcher/owner of SLM Transport (SLM), messaged Felix in the morning and requested pickup of a container from their facility in Mexicali to be transported to Calexico. Transcafe is a subcontractor of SLM, which, according to Felix, also goes by SML Transport (SML). He said Fregoso, through SLM or SML, usually pays him around $90 to deliver containers to Calexico, and he has done business with SLM/SML since around February of 2017. Felix said he has never been suspicious of SLM/SML trafficking drugs because they are certified by the Customs Trade Partnership Against Terrorism (CTPAT) program to be a low risk commercial carrier and they have cameras at their facility. Felix stated he believed AVILES did not knowingly import controlled substances.

20. Barrera said he has worked with his father Felix in his trucking business, Transcafe Trucking his entire life and has been a dispatcher at the business for around two years. Barrera has known AVILES for around three to four years. Barrera confirmed that SLM and SML are the same company. Barrera said SLM/SML contacted them in the morning around 9-10:00 a.m. via WhatsApp to request pickup and delivery of a trailer, and

his sister Carla Felix told AVILES that SLM/SML had a job because AVILES was the only Transcafe driver who was free to accept work at the time. He also said Transcafe had picked up the same trailer from SLM/SML on November 30, 2018. Barrera also stated he believed AVILES did not knowingly import controlled substances.

21. Agents also contacted Jose Antonio Juaregui-Velasco (Juaregui), the owner of SML Transport (SML), the business that owned the trailer AVILES brought into the United States and that contained the controlled substances. Juaregui agreed to come to the Calexico Port of Entry for an interview.

22. Juaregui stated that he was the owner for SML, and had been for approximately a year. Juaregui stated he previously worked for SLM, (the owner of AVILES' tractor) until he split off and created SML. The businesses are located next to each of other in Mexico. Juaregui stated he worked for SLM for approximately three years, but that they are separate entities and he does not work with SLM.

23. Juaregui said he did not know that CBP seized SML's trailer on December 5, 2018, or that it was filled with around 600 kilograms of illegal narcotics, and never suspected SLM of doing anything illegal. He claimed he has not seen either Fregoso since December 5, 2018. Juaregui stated SML is a completely legitimate business and he never heard anything about, and does not know anything about drug trafficking, even while working at SLM. He did notice that Felizardo Fregoso changed cars frequently. Juaregui did not provide an explanation of why SLM was using SML's trailer when it crossed into the United States if they were indeed separate entities with separate businesses.

24. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the SUBJECT OFFENSES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures, and other digital information, are stored in the SUBJECT DEVICE.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

25.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

26.     Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis.  All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.  The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

28. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

29. The United States has previously attempted to download the SUBJECT DEVICE on the date of AVILES arrest. As stated above, much of the information from the SUBJECT DEVICE appeared to have been deleted. The United States hopes to recover additional information through a more thorough forensic examination of the SUBJECT DEVICE. On December 14, 2018, the Honorable Roger T. Benitez issued a federal warrant authorizing the search of the SUBJECT DEVICE. The warrant specifically authorized agent(s) to search the device to identify and extract data within the scope of the warrant. My affidavit in support of the warrants provided that "The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days absent further application to this court."

30. Since that time, we have attempted to execute the warrant. Unfortunately, due to technical issues, we have been unable extract any data from the SUBJECT DEVICE. During that time, computer forensic agents in San Diego, California were unable to perform a search of the SUBJECT DEVICE due to not having the requisite examination equipment. San Diego, California agents arranged for the SUBJECT DEVICE to be sent to another more extensive computer forensic examination facility located near Fairfax, Virginia (Fairfax). From December 22, 2018 to January 25, 2019 the United States Federal Government experienced a partial shutdown and did not have

8

funds available to mail, process, or examine the SUBJECT DEVICE to the facility in Fairfax.

31.     After the shutdown resolved on January 26, 2019, agents sent the SUBJECT DEVICE to the facility in Fairfax. However, as of March 18, 2019, agents at the computer forensic facility in Fairfax have been similarly unable to complete a search of the SUBJECT DEVICE due to not having the necessary equipment. They have arranged for the SUBJECT DEVICE to be searched by a third-party contract forensic examination facility but have not been able to complete a search of the SUBJECT DEVICE at the contract facility to date. Meanwhile, the original warrant lapsed. For these reasons, I am seeking a second warrant for a computer forensic search of the SUBJECT DEVICE.

## CONCLUSION

32.     Based on my training and experience, and the foregoing facts, I believe there is probable cause to believe the items listed above, as described in ATTACHMENT B, which are the fruits, instrumentalities, and evidence of the SUBJECT OFFENSES will be found in the SUBJECT DEVICE, as described in ATTACHMENT A.

David Hanan, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 20th day of March, 2019.

HONORABLE RUTH BERMUDEZ MONTENEGRO
United States Magistrate Judge

9